IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| WINFRED FIELDS, | ) |
| Petitioner, | ) |
| v. | ) Case No. 2:23-cv-02336-JPM-tmp |
| F. J. BOWERS, ET AL., | ) |
| Respondents. | ) |

**ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2241,
CERTIFYING APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court is the *pro se* Petition for Writ of Habeas Corpus ("§ 2241 Petition") filed by Petitioner Winfred Fields, Bureau of Prisons ("BOP") register number 81687-479, an inmate at the Federal Correctional Institution Memphis Satellite Camp in Millington, Tennessee. (*See* ECF No. 1.) On June 8, 2023, Fields paid the filing fee. (ECF No. 4.) The Clerk shall record the Respondent as FCI Memphis Warden F.J. Bowers.[1] Because Fields is not entitled to relief under § 2241, the Court **DENIES** the § 2241 Petition.

I.  BACKGROUND

In February 2020, Fields was convicted in the United States District Court for the Southern District of Texas on one count of conspiracy to commit mail fraud and wire fraud, one count of mail fraud, and thirteen counts of aiding and assisting the preparation and presentation of false tax

---

[1] The proper respondent to a habeas petition is the petitioner's custodian. *Rumsfeld v. Padilla*, 542 U.S. 426, 434-435 (2004). The Clerk shall terminate all references to C. Peters, T.D. Avery, T. Hardy, N. Smith, and the Federal Bureau of Prisons as respondents.

returns.  See United States v. Fields, No. 4:18-cr-000316, Doc. 111 (S. D. Tex. Feb. 13, 2020); see also id., Doc. 214 (S.D. Tex. Sept. 9, 2020).  In September 2020, he was sentenced to 108 months in prison, to be followed by a three-year term of supervised release.  Id.

## II.     THE § 2241 PETITION

On May 25, 2023, Fields filed a § 2241 Petition.  (ECF No. 1.)  He seeks placement on home confinement under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Public Law No. 116-136, and has attempted to exhaust his administrative remedies through the BOP's administrative process.  (Id. at PageID 3.)  He states that his "ability to exhaust his administrative remedies w[as] not made available" and was "thwarted by prison administration."  (Id. at PageID 3, 9.)

In August 2022, Fields met with Unit Manager Smith and Case Manager Sanford about applying for CARES Act home confinement via a "cop-out."[2]  (Id. at PageID 4.)  Fields was told that he must have completed 50% of his sentence to qualify and was not allowed to apply.  (Id.)  Fields presented Smith and Sanford with a Department of Justice ("DOJ") Office of Legal Counsel Opinion stating that the "BOP has used its expanded authority to prioritize home confinement of prisoners who completed at least twenty-five percent of their sentence and have less than eighteen months left, or who have completed at least fifty percent of their sentences."  (Id.; see ECF No. 1-2 at PageID 22.)

On November 18, 2022, Fields submitted an Attempt at Informal Resolution Form ("BP-8") requesting home confinement.  (See ECF No. 1-3.)  On November 25, 2022, Camp Counselor D. Heaston responded "that this matter cannot be resolved at this level, however, you are encouraged to continue forward with the Administrative Remedy process, by filing an

---

[2] A "cop-out" appears to be an Inmate Request to Staff.

Administrative Remedy (BP 9), where you will receive an official response to your concerns." (ECF No. 1-4 at PageID 26.) That same day, Fields filed a Request for Administrative Remedy ("BP-9") requesting home confinement. (ECF No. 1-5 at PageID 30.) Fields asserts that Heaston told Fields that Smith had no intention of answering the BP-9 and that Fields needed to start the administrative process over. (ECF No. 1 at PageID 5.)

On December 26, 2022, Fields submitted a BP-229 to the BOP Regional Director along with a BP-10. (See ECF No. 1-4 at PageID 27-29.) Fields contends that on February 26, 2023, Sanford asked him if he had health problems, and Fields responded that he had Type 2 diabetes, high blood pressure, a recent spine surgery, and heart palpitations. (ECF No. 1 at PageID 5.) Fields told Sanford about the pending BP-10. (Id.) Sanford said that procedures had changed, all requests must be reviewed by the Home Confinement Committee, there was no longer a requirement to complete 50% of your sentence, and that Fields should "submit a new cop-out and I will put you in." (Id.)

Fields submitted the cop-out on February 26, 2023. (See ECF No. 1-6.) On March 20, 2023, Sanford called Fields to sign the necessary documents for BOP approval. (ECF No. 1 at PageID 5.) On April 15, 2023, Sanford informed Fields that Residential Reentry Management (RRM) denied his request for home confinement because he had not served 50% of his sentence. (Id.) On April 17, 2023, Fields submitted a BP-8 to see his file for verification of the referral and RRM's denial. (Id.; see ECF No. 1-7.) On April 20, 2023, Fields received a rejection notice dated January 11, 2023, on his regional appeal, three months after it was delivered to FCI Memphis. (ECF No. 1 at PageID 5-6; see ECF No. 1-9.) On April 23, 2023, Fields was allowed to review his BOP Central file. (ECF No. 1 at PageID 7.) On April 28, 2023, Fields spoke with Camp Administrator/Administrative Remedy Coordinator Avery about the denial of his home

3

confinement request and asked if there was a way for him to appeal RRM's decision. (Id.) Fields spoke with Avery, Hardy, and Heaston that day about the matter and discovered that his BP-9 regarding home confinement was not in the system. (Id. at PageID 7-9.)

Fields contends that the BOP: (1) failed to comply with the CARES Act and failed to follow policy set forth by the Attorney General within its own regulations (id. at PageID 10-12); and (2) denied Fields fair and impartial treatment in the administrative remedy process on his request for home confinement (id. at PageID 13-14).

Fields requests a writ of habeas corpus directing Respondent to award him home confinement according to CDC guidelines so he may "serve the remainder of his federal sentence in a safe place with a greater chance of not contacting a deadly disease such as COVID-19." (Id. at PageID 15.)

### III.   ANALYSIS OF PETITIONER'S CLAIM

This Court is authorized to issue a writ of habeas corpus under 28 U.S.C. § 2241(c)(3) when a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." A petition will be denied "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). For the reasons stated below, Fields' § 2241 petition will be dismissed on initial screening because Fields seeks relief that is unavailable in a § 2241 proceeding.

The BOP has the sole authority to determine the place of an inmate's confinement. 18 U.S.C. § 3621(b). The BOP also has the authority to permit an inmate to serve the end of a term of incarceration in a community correctional facility or residential reentry center ("RRC"), such as a halfway house, for a period not to exceed twelve months, or to place an inmate on home

confinement for the shorter of ten percent of the term of imprisonment or six months. 18 U.S.C. § 3624(c)(1) and (2). That authority was expanded under the CARES Act, § 12003(b)(2), which provides:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau [of Prisons] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CARES Act, Pub. L. 116-136, Div. B., Title II, § 12003(b)(2).

On March 26, 2020, the Attorney General of the United States issued a Memorandum regarding prioritizing home confinement of current federal inmates where appropriate in response to the ongoing COVID-19 pandemic. See March 26, 2020 Memorandum from the Attorney General to the Director of BOP regarding "Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic," available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last accessed June 28, 2023). In this Memorandum, the Attorney General directs the BOP to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." Id. The Memorandum sets forth a non-exhaustive list of discretionary factors to be considered in assessing which inmates should be granted home confinement. Id. at 1-2. Although the Memorandum encourages the use of home confinement as an alternative, it clearly leaves the determination of whether home confinement is appropriate to the discretion of the BOP.

On April 3, 2020, the Attorney General issued a second Memorandum, specifically intended to encourage the use of home confinement for inmates at institutions most affected by COVID-19. See April 3, 2020 Memorandum from the Attorney General for the Director of BOP

5

regarding "Increasing Use of Home Confinement at institutions Most Affected by COVID-19," available at https://www.justice.gov/file/1266661/download (last accessed June 28 2023).  The Memorandum states that the BOP has an obligation to protect people in its custody and "an obligation to protect the public."  Id. at p. 2.  In light of these obligations, the Memorandum advises that "while I am directing you to maximize the use of home confinement at affected institutions, it is essential that you continue making the careful, individualized determinations BOP makes in the typical case.  Each inmate is unique and each requires the same individualized determinations we have always made in this context."  Id. at p. 3.  That memorandum identified three specific institutions and addressed home confinement for "suitable candidates."  FCI Memphis Satellite Camp was not one of the institutions identified.

   The CARES Act authorizes the Director of BOP to place prisoners in home confinement only during the statute's covered emergency period and when the Attorney General finds that the emergency conditions are materially affecting BOP's functioning.  See Home Confinement of Federal Prisoners After the COVID-19 Emergency, Slip Opinion for General Counsel, Federal Bureau of Prisons (last accessed June 28, 2023).  On April 10, 2023, President Biden signed a bipartisan congressional resolution to end the national COVID-19 emergency, and the CARES Act covered emergency period ended 30 days later.  See CARES Act, § 12003(a)(2).

   When addressing a request for home confinement under the CARES Act, the BOP uses its authority under 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541 to effectuate the Attorney General's directives.  See Gould v. Warden, FCI Ashland, No. CV 23-41-DLB, 2023 WL 2868001, at *1 (E.D. Ky. Apr. 10, 2023).  The Court has no authority to grant the petitioner's request and order his release to home confinement.  See 18 U.S.C. § 3621(b).  A prisoner is not automatically entitled to or guaranteed placement on home confinement, even under the CARES Act.  See Gould, 2023

WL 2868001, at *2; see also Dudley v. Beard, No. CV 0:21-046-WOB, 2021 WL 2533030, at *4 (E.D. Ky. June 21, 2021). The BOP's placement decisions, including determinations regarding home confinement, are expressly insulated from judicial review, as the provisions of the Administrative Procedures Act ("APA") do not apply to such decisions. See id.; see also 18 U.S.C. § 3625. The authority to grant home confinement remains solely with the Attorney General and the BOP. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020); see also United States v. Mattice, No. 20-3668, 2020 WL 7587155, at *2 (6th Cir. Oct. 7, 2020) ("the BOP has sole discretion to transfer an inmate to home confinement").

Fields' efforts to exhaust his administrative remedies are commended, and the Court acknowledges his frustration with the process. However, this Court has no authority to override the BOP's decision or to order the BOP to place Fields on home confinement. See Johnson v. Williams, No. 4:20 CV 1352, 2020 WL 7324763, at *1 (N.D. Ohio Oct. 22, 2020) (denying § 2241 petition seeking home confinement). Because Fields has not demonstrated that § 2241 provides the relief requested, the § 2241 Petition is **DENIED**.

IV.     APPEAL ISSUES

Federal prisoners who file petitions pursuant to 28 U.S.C. § 2241 challenging their federal custody need not obtain certificates of appealability under 28 U.S.C. § 2253(c)(1). Witham v. United States, 355 F.3d 501, 504 (6th Cir. 2004); Melton v. Hemingway, 40 F. App'x 44, 45 (6th Cir. 2002).

A habeas petitioner seeking to appeal must pay the $505 filing fee required by 28 U.S.C. §§ 1913 and 1917. To appeal *in forma pauperis* in a habeas case under 28 U.S.C. § 2241, the petitioner must obtain pauper status pursuant to Fed. R. App. P. 24(a). Kincade v. Sparkman, 117 F.3d 949, 952 (6th Cir. 1997). Rule 24(a) provides that a party seeking pauper status on appeal

7

must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a)(1).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the petitioner must file his motion to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a)(4)-(5).

In the instant case, because Petitioner is clearly not entitled to relief, the Court determines that any appeal would not be taken in good faith.  It is therefore **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is **DENIED**.[3]

IT IS SO ORDERED this 6th day of July, 2023.

s/ JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE

---

[3] If Petitioner files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within 30 days.